313 So.2d 82 (1975)
George E. EDWARDS, Appellant,
v.
HARDIN PROPERTIES, INC., Pension Trust of Florida, Successor to Hills & Lakes Estates, Inc., a Florida Corporation, Appellee.
No. 74-172.
District Court of Appeal of Florida, Second District.
April 16, 1975.
Rehearing Denied June 17, 1975.
*83 Frank A. McClung, Brooksville, for appellant.
Joseph E. Johnston, Jr., Brooksville, for appellee.
McNULTY, Chief Judge.
The predecessor of appellee Hardin Properties, Inc. Pension Trust of Florida filed this action to quiet title to some 133 acres of land. Appellant Edwards answered claiming title by adverse possession to approximately ten acres of land located within and constituting a part of that 133 acres. Appellee prevailed and this appeal ensued. We reverse.
*84 Concededly, appellee-Hardin established a clear chain of record title to the entire 133 acre tract. The narrow question herein is whether appellant indeed established sufficiently his claim to title by adverse possession to the ten acres. We think he did.
To begin with, it is undisputed that appellant purchased his tract in 1967, that he has resided thereon in a small frame house until the present time and, admittedly, that he has not paid any taxes thereon since taking possession. Additionally, appellant does not claim adverse possession under color of title. The basis of his claim is that title by adverse possession had ripened in his predecessors prior to 1939, the year after which the payment of taxes for the requisite period of time is essential to the establishment of adverse possession without color of title.[1] If that be so, and he is correct in this, he contends that such ripened title cannot be defeated by the non-payment of taxes on the part of a successor to that title or by the payment of taxes by the successor to the prior title holders.[2]
On the precise point, and apart from appellant's own testimony, it was undisputedly established by two disinterested, native and resident septuagenarians, one Fulton who was familiar with the land now claimed by appellant since 1910 when his uncle owned the land (and who himself owned it from 1943 until 1949) and one Arick, that such land has been continuously occupied and cultivated as a small family-type farm, raising livestock and vegetables since 1910 and was, during that time and indeed up to the present time, substantially enclosed by fencing. It was also undisputedly established that there were several predecessors of appellant in possession since 1910; and while we cannot tell from the record precisely what periods or times each was in possession, we don't think it matters since it is clear that the statutory requirements of either substantial enclosure or usual cultivation,[3] or both, were met and satisfied prior to 1939. Title in appellee's predecessors, therefore, was divested during that period and title in appellant's predecessors became vested at the same time.
Now we are aware, of course, that the trial court, as the trier of fact, has the power and duty to evaluate the credibility of the witnesses. But it is also true that the reasonable, uncontradicted sworn testimony of a witness cannot and must not be ignored unless some reason appears why his testimony may not be credible.[4] Here, there is nothing appearing which would operate to discredit either of the aforesaid witnesses. The record shows them to be quite alert and aware despite their ages, they testified as to matters of fact, not opinion, and no attempt was made by appellee either in cross-examination or otherwise to impeach them. Their testimony should affirmatively have been credited.
Finally, we reject appellee's argument that the property which appellant claims was never adequately described. True it is that witnesses referred to it as "the disputed strip," "that property," "the property," etc. But while those references may not be as definite to location as a complete legal description, we think the parties well knew and assumed throughout that the tract in question constituted a part of and was within the tract to which appellee seeks to quiet title and that it was appellant's homeplace. Additionally, it is *85 patent from the record that the trial focused essentially on the establishment vel non of adverse possession of "George Edwards' place on Yontz Road," not on its precise boundary or description.
In view of the foregoing, therefore, we think the judgment appealed from should be, and it hereby, reversed. The cause is remanded for further proceedings not inconsistent herewith and for the entry of judgment establishing title by adverse possession to the lands claimed by appellant herein.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] By ch. 19254 (Laws 1939) (now § 95.18 F.S. 1973), § 2936, Rev.Gen.Stat. 1920, was amended to require the payment of taxes as a condition precedent to acquiring title by adverse possession without color of title.
[2] See Addis v. Hoagland (1942) 150 Fla. 694, 8 So.2d 655; Polk v. Kelley (Fla.App.2d, 1966), 184 So.2d 494.
[3] See § 2936, Rev.Gen.Stat. 1920, which, in this respect, is identical to the present statute § 95.19.
[4] See Harris v. State (Fla.App.2d, 1958), 104 So.2d 739; Kinney v. Mosher (Fla.App.1st, 1958), 100 So.2d 644. See also 35 Fla.Jur. Witnesses § 262.